# Mellon Bank N.A. v. Maris Equipment Co.

*Daniel S. Bernheim,* for plaintiff.
*Kevin J. Carey,* for defendant.

HERRON, *J.,* July 26, 2000—This case involves a dispute between a bank and an account holder over an alleged overdraft of funds and the failure to repay these funds. Presently before this court are the preliminary objections of defendant Maris Equipment Company Inc. to the complaint of plaintiff, Mellon Bank N.A. For the reasons which follow, defendant's preliminary objections are overruled.

## FACTUAL AND PROCEDURAL BACKGROUND

The pertinent facts of this case, as pleaded in Mellon's complaint, are as follows. Maris has maintained a bank account at Mellon, bearing the account number 2-707-883. Complaint at ¶3. On November 20, 1997, the sum of $51,501 was deposited into the account, but the account was only credited with $5,101 due to a processing error. *Id.* at ¶4. Then, on November 21, 1997, Mellon corrected this error and adjusted the account by issuing a credit in the amount of $46,400. *Id.* at ¶5. Further, on November 25, 1997, Mellon inadvertently credited the account for a second time in the amount of $46,400. *Id.* at ¶6. These funds were withdrawn before Mellon could correct its mistake, which created an overdraft to the account in the amount of $46,400. *Id.* Maris allegedly has refused to repay to Mellon the funds that were erroneously credited to the account, despite its alleged promises to do so. *Id.* at ¶7.

On March 20, 2000, Mellon filed a complaint, asserting claims against Maris for breach of contract, unjust

enrichment and fraud, seeking damages in the amount of $55,680, plus interest and costs of the suit.[1] See *id.,* Counts I-III. On May 16, 2000, Maris filed preliminary objections in the nature of a demurrer to Counts I through III. Specifically, Maris asserts the following: (1) the complaint should be stricken for failure to attach a proper verification, pursuant to Pa.R.C.P. 1024(c); (2) Counts I and II should be dismissed for failure to attach the contract of deposit, as required by Pa.R.C.P. 1019(h); (3) Count III should be dismissed for failure to plead fraud with specificity, as required by Pa.R.C.P. 1019(b); (4) Counts II and III should be dismissed under the "gist of the action" doctrine; and (5) Count I should be dismissed for failure to state a claim for breach of contract. See preliminary objections, ¶¶1-23. On June 28, Mellon filed its answer to the preliminary objections, along with its memorandum of law.

## DISCUSSION

In ruling on preliminary objections, in the nature of a demurrer, the court accepts as true all well-pleaded, material and relevant facts, as well as every inference reasonably deducible from those facts. *Willet v. Pennsylvania Medical Catastrophe Loss Fund,* 549 Pa. 613, 619, 702 A.2d 850, 853 (1997). Preliminary objections, which

---

1. This damages figure equals to the sum of the overdraft, $46,400, and $9,280, as reasonable attorney's fees. In the Banking Rules and Regulations, the section, entitled "insufficient funds," provides for "costs and expenses of the suit and reasonable legal fees" in the event that the bank sues to collect an overdraft. Exhibit 1. However, it does not explicitly provide for these fees in the amount of 20 percent of the overdraft.

result in a denial of the pleader's claim or the dismissal of his suit, should only be sustained in cases that clearly and without a doubt fail to state a claim for which relief may be granted under any theory of law. *Id.* In addition where doubt exists as to whether a demurrer should be sustained, the doubt should be resolved in favor of overruling it. *Id.* at 619-20, 702 A.2d at 853. See also, *Chem v. Horn,* 725 A.2d 226, 228 (Pa. Commw. 1999) (stating that "[t]he question presented by a demurrer is whether, in the facts averred, the law says with certainty that no recovery is possible.").

## I. *Maris' Objections As to Improper Verification and Failure To Attach the Contract of Deposit*

Maris first objects to the verification of the complaint by Mellon's counsel because it does not allege either that the plaintiff lacked sufficient knowledge to verify the claims or that the plaintiff was outside of the jurisdiction and a verification could not otherwise be obtained, as required by Rule 1024(c), Pa.R.C.P. Maris's second objection asserts that Counts I and II should be stricken where Mellon failed to attach the contract of deposit, which forms the basis for Counts I and II and must be attached pursuant to Rule 1019(h), Pa.R.C.P. In its answer, Mellon argues that these objections are now moot since the verification of Ronald P. Forcina, assistant vice president of Mellon, was substituted for that of counsel on June 2, 2000. See exhibit 1. On that same date, Mellon also attached its Business Banking Rules and Regulations, along with copies of a blocked account agreement, which together constitute the contract of deposit according to Mellon. See *id.*

In deciding this issue, Rule 126 of the Pennsylvania Rules of Civil Procedure is particularly applicable where it states:

"The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties." Pa.R.C.P. 126.

In addition, the Pennsylvania Superior Court has stated that: "[t]he Rules of Civil Procedure are designed to achieve the ends of justice and are not to be accorded the status of substantive objectives requiring rigid adherence .... 'Courts should not be astute in enforcing technicalities to defeat apparently meritorious claims.' " *Lewis v. Erie Insurance Exchange,* 281 Pa. Super. 193, 199, 421 A.2d 1214, 1217 (1980). (citations omitted) In *Lewis,* the court held that it was an abuse of discretion to dismiss the petition based on a defective verification without affording the petitioner an opportunity to file an amended verification. *Id.* at 198-99, 421 A.2d at 1217. See also, *Mickens-Thomas v. Commonwealth, Board of Probation and Parole,* 699 A.2d 792, 795 n.2 (Pa. Commw. 1997) (court overruled preliminary objections to defective verification and service where plaintiff subsequently corrected the alleged defects); *Grode v. Mutual Fire, Marine, and Inland Insurance Co.,* 154 Pa. Commw. 366, 368, 623 A.2d 933, 934 (1993) (overruled preliminary objection where plaintiff assured the court that it would provide the necessary documents to the defendant).

This court overrules the objections to defective verification and failure to attach a writing as moot. Mellon has corrected these alleged defects in a sufficiently timely manner; such that Maris has not been prejudiced.

## II. Maris' Objection to Count III for Failure To Plead a Cause of Action for Fraud

Maris' third objection asserts that Mellon failed to state a cause of action for fraud where Count III does not "identify any action or statement made by Maris that was allegedly a misrepresentation of fact" and "fails to identify what . . . alleged misrepresentation of material fact was made with knowledge of its falsity or reckless disregard for its truth or falsity." Preliminary objections at ¶¶13(a) and (b). Maris also contends that Mellon's claim for fraud is a "mere recital of the elements of fraudulent misrepresentation without any pleading of material facts sufficient to state a claim for fraud pursuant to Rule 1019(b)." *Id.* at ¶13(c). In response, Mellon asserts that it sufficiently stated a claim for fraud where its "complaint clearly alleges that Maris knew of the erroneous credit and instructed Mellon to make payment from the account in order to take advantage of the mistake before the bank learned of the error." Pl. memorandum of law at 5-6.

Generally, "[f]raud is a claim easily made but difficult to support. Once an allegation of fraud is injected into a case, even though it may ultimately be shown to be without any arguable merit, the whole tone and tenor of the matter changes." *New York State Electric & Gas Corp. v. Westinghouse Electric Corp.,* 387 Pa. Super. 537, 553,

564 A.2d 919, 927 (1989). It "consists of anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false whether it be by direct falsehood or innuendo, by speech or silence, word of mouth or look or gesture." *Delahanty v. First Pennsylvania Bank N.A.,* 318 Pa. Super. 90, 107, 464 A.2d 1243, 1251 (1983) (citing *Frowen v. Blank,* 493 Pa. 137, 143, 425 A.2d 412, 415 (1981)).

To establish a claim for fraudulent misrepresentation, the plaintiff must allege the following elements: "(1) [a] representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Bortz v. Noon,* 556 Pa. 489, 499, 729 A.2d 555, 560 (1999). (citations omitted) Further, "if the misrepresentation is made *knowingly* or involves a non-privileged failure to disclose, materiality is not a requisite to the action." *Delahanty,* 318 Pa. Super. at 108, 464 A.2d at 1252. (citation omitted) (emphasis added)

Moreover, averments of fraud must be alleged with particularity. Rule 1019(b), Pa.R.C.P. The Pennsylvania Supreme Court has stated that "although it is impossible to establish precise standards as to the degree of particularity required under this rule, two conditions must be met to fulfill the requirement: (1) the pleadings must adequately explain the nature of the claim to the opposing party so as to permit the preparation of a defense, and (2) they must be sufficient to convince the court that the averments are not merely subterfuge." *Martin v.*

*Lancaster Battery Co. Inc.,* 530 Pa. 11, 18, 606 A.2d 444, 448 (1992) (citing *Bata v. Central-Penn National Bank,* 423 Pa. 373, 380, 224 A.2d 174, 179 (1966)). In determining whether this requirement has been satisfied, the court must examine the complaint in its entirety. *Commonwealth by Zimmerman v. Bell Telephone Co. of Pa.,* 121 Pa. Commw. 642, 649, 551 A.2d 602, 605 (1988).

Count III of the complaint, sets forth, in pertinent part, the following allegations:

"(15) Maris' actions in knowingly withdrawing funds to which they had no right or entitlement constitute fraudulent misrepresentations. Said misrepresentations were made by Maris with actual knowledge of their falsity or with reckless disregard as to their truth or falsity, and were made with an intention that Mellon would thereby be induced to act. As a result of its justifiable reliance on Maris' misrepresentations, Mellon has suffered damages in the amount of the aforementioned overdraft and attorney's fees." Complaint at ¶15.

Plaintiff also explicitly alleged that

"(6) On November 25, 1997, Mellon inadvertently credited the account, for a second time, in the amount of $46,400. Before Mellon could correct the error, the funds inadvertently credited to the account were withdrawn, thereby creating an overdraft to the account in the amount of $46,400.

"(7) Despite repeated promises, Maris has refused to repay to Mellon the funds that were erroneously credited to the account." *Id.* at ¶¶6-7.

The gravamen of Mellon's claim of fraud is that Maris misrepresented its entitlement to the funds when it with-

drew them, and, in so doing, induced Mellon to act to its detriment by remitting these funds to Maris and resulting in an overdraft of the account. Contrary to Maris' assertions, paragraph 15 of the complaint does identify a misrepresentation of material fact; *i.e.,* the allegedly wrongful and knowing withdrawal of funds to which Maris had no entitlement. It is common sense that, in withdrawing money from its account Maris had to instruct Mellon in some affirmative manner. Further, by alleging that Maris "knowingly" withdrew funds to which "they had no . . . entitlement" Mellon was not required to explicitly allege the element of materiality. See *Delahanty,* 318 Pa. Super. at 108, 464 A.2d at 1252. This court may thus reasonably infer that the alleged action on Maris' part constitutes a material misrepresentation despite that the complaint does not explicitly allege that Maris made a false statement. Further, the allegations do sufficiently set forth the remaining elements for fraudulent misrepresentation in order that Maris may prepare a defense to this claim. Accepting these allegations as true, it is possible that Mellon could present evidence to recover on a theory of fraudulent misrepresentation. It would be premature to dismiss the fraud claim at this stage of the proceedings since Mellon has sufficiently pled a cause of action for which relief can be granted.

Therefore, this court overrules the objection to Count III.

### III. Maris' Objection to Counts II and III Under the "Gist of the Action" Doctrine

Maris also objects to Counts II and III on the grounds that the claims for unjust enrichment and fraud are barred

by the "gist of the action" doctrine, which disallows tort claims where the gravamen of the action "unquestionably" arises out of the contractual relationship. See preliminary objections at ¶¶16-19. In response, Mellon asserts that their "claims for fraud and breach of contract are wholly independent of each other such that each could stand alone without the other and still Mellon would nonetheless be entitled to relief." Pl. memorandum of law at 7.

Determining whether Mellon's complaint sounds primarily in contract or in tort "is difficult due to the somewhat confused state of our law." *Redevelopment Authority of Cambria County v. International Insurance Co.,* 454 Pa. Super. 374, 391, 685 A.2d 581, 590 (1996) (citing *Grode v. Mutual Fire, Marine, and Inland Insurance Co.,* 154 Pa. Commw. 366, 623 A.2d 933 (1993)). There are two lines of case law relating to the issue. The first line arose with *Raab v. Keystone Insurance Co.,* 271 Pa. Super. 185, 412 A.2d 638 (1979), which examined a claim that an insurance company had negligently failed to pay benefits according to an insurance contract. In *Raab,* the court stated the following:

"Generally, when the breach of a contractual relationship is expressed in terms of tortious conduct, the cause of action is properly brought in assumpsit and not in trespass. . . . However, there are circumstances out of which a breach of contract may give rise to an actionable tort. . . . The test used to determine if there exists a cause of action in tort growing out of a breach of contract is whether there was an improper performance of a contractual obligation (misfeasance) rather than the mere

failure to perform (nonfeasance)." *Id.* at 187-88, 412 A.2d at 639. (citations omitted)

The Pennsylvania Superior Court has later rejected the "simple rule" expressed in *Raab* as inadequate to determine the true character of a claim, but instead, has followed the approach announced in *Bash v. Bell Telephone Co.*, 411 Pa. Super. 347, 601 A.2d 825 (1992).[2] See *e.g., Redevelopment Authority,* 454 Pa. Super. at 392, 685 A.2d at 590; *Phico Insurance Co. v. Presbyterian Medical Services Corp.,* 444 Pa. Super. 221, 228, 663 A.2d 753, 757 (1995). The *Phico* court noted the following:

"In *[Bash],* . . . which arose in connection with the breach of an agreement relating to the publication of a telephone directory advertisement, we examined federal authority and indicated that to be construed as a tort action, the wrong ascribed to the defendant must be the *gist of the action* with the contract being collateral. In addition, we noted that a contract action may not be converted into a tort action simply by alleging that the conduct in question was done wantonly. Finally, we stated that the important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus." *Id.* at 228-29, 663 A.2d at 757. (emphasis added)

In support of its position, Maris also relies upon the federal case of *Sunquest Info. Sys. Inc. v. Dean Witter*

---

2. In *Bash,* the Superior Court, affirming the preliminary objections, held that the alleged failure to include the customer's advertisement in the telephone directory arose out of the contractual obligations, and was not actionable in negligence. *Id.* at 356-57, 601 A.2d at 829-30.

*Reynolds Inc.* 40 F. Supp.2d 644 (W.D. Pa. 1999). In *Sunquest,* the court held that Pennsylvania's "gist of the action" barred the fraud and misrepresentation claims against the former owner where they essentially duplicated an action for breach of contract, and alleged a failure to perform according to the terms of that contract. *Id.* at 651-53. The court also noted that "a plaintiff cannot assert a fraud or negligent misrepresentation claim when that theory is 'merely another way of stating its breach of contract claim,' or when its success 'would be wholly dependent upon the terms of the contracts.' " *Id.* at 651. (citations omitted) While this case cites the general principles of the "gist of the action" doctrine, it is not dispositive of the present case, which alleges more than a mere failure to perform a contractual obligation.

Rather, the reasoning and procedural posture of *Grode* is more persuasive in deciding the present issue. In that case, the Commonwealth Court overruled preliminary objections to the tort claims brought by an insurance company against a contractor despite the parties' contractual relationship. 154 Pa. Commw. at 373, 623 A.2d at 937. It recognized that the complaint clearly alleged negligent and fraudulent performance under the contractual relationship, rather than a failure to perform. *Id.* at 373, 623 A.2d at 936. Further, the court reasoned that "a tort claim in a contractual relationship for services should not be dismissed at an early stage of proceedings prior to the production of evidence" since "a substantial body of Pennsylvania case law holds a defendant liable in tort for misfeasance in the performance of a contract." *Id.* at 372, 623 A.2d at 936 (quoting *Public Service Enterprise*

*Group Inc. v. Philadelphia Electric Co.,* 722 F. Supp. 184, 212 (D.N.J. 1989)). The *Grode* court also emphasized the relevance to the procedural posture of the case and the need to develop a factual record in order to better determine the relationship between the parties. *Id.*

Here, like in *Grode,* the claim for fraudulent misrepresentation clearly alleges misfeasance in connection with the contractual relationship, rather than merely a failure to perform. The gravamen of the fraud claim alleges that Maris wrongfully withdrew funds to which they knew that they were not entitled. See complaint at ¶15. On the other hand, the gravamen of the breach of contract claim is that Maris failed to cure the overdraft as required by the contract of deposit, and is now liable to Mellon for both the amount of the overdraft and for reasonable attorney's fees. See *id.* at ¶¶9-10. It seems that the alleged "wrong" in this case relates primarily to the withdrawal of funds and is the focus of the fraud claim, while the breach of contract claim appears to be a continuation of that "wrong." Therefore, the claim for fraudulent misrepresentation is not wholly dependent on the terms of the contract of deposit, nor is it merely a way of re-stating its breach of contract claim. Under either the *Raab* line of reasoning, or that of *Bash* and its progeny, Mellon's claim for fraudulent misrepresentation cannot now be dismissed without a factual record relating to the parties' relationship and the alleged misconduct.

Moreover, the "gist of the action" doctrine has no application to the unjust enrichment claim, nor does Maris cite any support for their contention as to this claim. Unjust enrichment is a quasi-contractual doctrine based

in equity which requires the following elements: (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. *Wiernik v. PHH U.S. Mortgage Corp.*, 736 A.2d 616, 622 (Pa. Super. 1999).

The complaint alleges in pertinent part that "Maris has been unjustly enriched in that it has had use of the aforementioned sum of $46,400 to which it had no right or entitlement. These funds were utilized for the benefit of Maris and have not, despite demand, been returned to Mellon." Complaint at ¶12. This allegation, when read in the context of the entire complaint, would be sufficient to state a claim for unjust enrichment. Moreover, in the event that it was later determined that Maris did not breach its contract with Mellon, this claim could provide an alternate route to recovery. Contrary to Maris' position, the unjust enrichment claim is not barred as a matter of law.

Thus, Maris' objection to Counts II and III is overruled.

### IV. *Maris' Objection to Count I for Failure To State a Claim for Breach of Contract*

Maris' final objection is that Count I fails to state a claim for breach of contract where Mellon "has failed to sufficiently allege the existence of a contract or the essential terms of the contract [and] has also failed to allege a breach of a duty imposed by the contract." Pre-

liminary objections at ¶22. In response, Mellon asserts its allegations are sufficient and that its relationship with Maris, as debtor and creditor, together with its contract of deposit, set forth the parties' contractual duties to one another. Pl. memorandum of law at 9.

To establish a cause of action for breach of contract, the plaintiff must allege "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *CoreStates Bank N.A. v. Cutillo,* 723 A.2d 1053, 1058 (Pa. Super. 1999). (citations omitted) Further, "[w]hile not every term of a contract must be stated in complete detail, every element must be specifically pleaded." *Id.* at 1058.

Count I sets forth the following allegations in pertinent part:

"(9) Maris has breached its contract of deposit with Mellon by failing to cure the aforementioned overdraft in the amount of $46,400.

"(10) Pursuant to the contract of deposit, defendant is liable for Mellon's reasonable attorney's fees in the amount of 20 percent of the aforementioned overdraft, or $9,280." Complaint at ¶¶9-10. Mellon also alleged that "Maris maintained a bank account at Mellon bearing account number 2-707-883." *Id.* at ¶3.

Contrary to Maris' assertions, these allegations do sufficiently state a cause of action for breach of contract. The averments explicitly allege that Maris maintains a bank account at Mellon and also allege the existence of a contract of deposit. It is well established that the legal relationship between a financial institution and its de-

positors is based on contract, and that the contract terms are contained in the signature cards and deposit agreements. *First Federal Savings and Loan Association of Hazleton v. Office of the State Treasurer,* 543 Pa. 80, 83, 669 A.2d 914, 915 (1995); *McGuire v. Shubert,* 722 A.2d 1087, 1091 (Pa. Super. 1998). In addition, Mellon did sufficiently plead a breach of a duty imposed by the contract where it alleged that Maris failed "to cure the aforementioned overdraft." Complaint at ¶9. It is undisputed that Mellon pleaded damages resulting from the alleged breach.

Therefore, Maris' objection to Count I is overruled.

## CONCLUSION

For all of the above reasons, the preliminary objections of defendant Maris are overruled. Defendant shall file an answer to plaintiff's complaint within 20 days of the date of entry of this memorandum opinion and accompanying order.

## ORDER

And now, July 26, 2000, upon consideration of the preliminary objections of defendant Maris Equipment Company Inc., to the complaint of plaintiff Mellon Bank N.A., and plaintiff's response thereto, and in accordance with the memorandum opinion being filed contemporaneously with this order, it is hereby ordered that the preliminary objections are overruled.

It is further ordered that defendant shall file an answer to plaintiff's complaint within 20 days of the date of entry of this order.