J-A34016-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| OCWEN LOAN SERVICING | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| JAYNIE BEARD | |
| Appellee | No. 641 MDA 2015 |

Appeal from the Judgment Entered March 30, 2015
In the Court of Common Pleas of Dauphin County
Civil Division at No(s): 2014-CV-00274-MF

BEFORE:  PANELLA, J., OTT, J., and JENKINS, J.

MEMORANDUM BY OTT, J.:                    **FILED FEBRUARY 26, 2016**

Ocwen Loan Servicing (Ocwen) appeals from the judgment entered against it on March 30, 2015, in the Court of Common Pleas of Dauphin County.  This judgment made final prior orders of court dated April 29, 2014, December 4, 2014, January 12, 2015 and March 13, 2015.  In this timely appeal, Ocwen presents six issues, raising a variety of substantive and procedural issues regarding the trial court's dismissal of Ocwen's attempt to foreclose on Beard's property.  After a thorough review of the submissions by the parties, relevant law, and the certified record, we agree with the trial court that substantial flaws existed in Ocwen's attempt, and therefore, we affirm the judgment entered against Ocwen, without prejudice for Ocwen to seek foreclosure in another action, as may be necessary.

This appeal presents mixed questions of law and fact. As such, we examine the entire certified record. *See* 42 Pa.C.S. § 5105(d)(1). Regarding issues of law, our standard of review is *de novo* and our scope of review is plenary. *First Citizen's Nat'l Bank v. Sherwood*, 879 A.2d 178, 180 (Pa. 2005). We are bound by the trial court's factual findings and credibility determinations insofar as they are supported by the record. *In re Condemnation by Urban Redevelopment Auth. of Pittsburgh*, 93 A.2d 178, 183 (Pa. 2006). Additionally, regarding issues reviewed for abuse of discretion,

> An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will. An abuse of discretion will not be found where an appellate court simply concludes that it would have reached a different result than the trial court. If the record adequately supports the trial court's reasons and factual basis, an appellate court may not conclude the court abused its discretion.

*Gall v. Crawford*, 982 A.2d 541, 547 (Pa. Super. 2009).

The procedural and factual history of this matter is complex, and we adopt the trial court's recitation and quote it herein:

> This case was initiated by the filing of Complaint in mortgage foreclosure by [Ocwen] against [Beard] on January 9, 2014. [Beard] signed a Mortgage and Note on April 25, 2003, for the purchase of real property located at 3515 Schoolhouse Lane, Harrisburg, Pennsylvania. The Mortgage and Note were between [Beard] and Columbia National Incorporated, the lender.
>
> The Complaint avers that [Ocwen] is the legal holder of the Mortgage that is the subject of this action through an assignment of mortgage. [Ocwen] alleged that the Mortgage

was in default beginning December 1, 2012. The Complaint also avers that the "breach letters" were sent in accordance with Act 6 and Act 91. The Act 91 notice attached as an exhibit is dated November 26, 2012, lists the current lender as Homeward Residential, and states that the mortgage was in default as of August 1, 2012. [Beard] filed timely preliminary objections arguing that:

(1) The subject Mortgage does not specify any time of payment, thus there is no basis upon which [Beard] could be found in default;

(2) [Ocwen] does not allege that it is the owner or in possession of the Note, and is not the proper party to bring the foreclosure action;

(3) A copy of the Note was not attached to the Complaint as required by Pa.R.Civ.P. 1019(i);

(4) The Act 91 Notice attached as an exhibit was not sent by the mortgagee [Ocwen], and was sent by Homeward Residential instead; and

(5) The Verification was defective because it was signed by an "Authorized Signer" and not a person with personal knowledge of the facts contained in the pleading.

This Court sustained [Bread's] preliminary objections on April 29, 2014, and granted [Ocwen] leave to amend the complaint within twenty (20) days.

On May 16, 2014, [Ocwen] filed an Amended Complaint that was substantially similar to the original Complaint. [Ocwen] failed to allege any new facts that were not included in the original Complaint. However, [Ocwen] did attach additional documents as exhibits, such as Assignment of Mortgage from Columbia National to Homeward Residential, the Assignment of Mortgage from Homeward Residential to [Ocwen], the original Note between [Beard] and Columbia National, and the original Mortgage between [Beard] and Columbia National.

[Beard] again filed timely preliminary objections, raising the following issues:

(1) The Assignment of Mortgage between Columbia National and Homeward Residential was not executed by an officer of the recorded owner of the mortgage, thus the assignment of the mortgage is invalid. By virtue of this fact, the Assignment of Mortgage between Homeward Residential and [Ocwen] is also invalid. Therefore, [Ocwen] is not a proper party and does not have standing to bring a foreclosure action;

(2) The Assignment of Mortgage between Homeward Residential and [Ocwen] was not executed by an officer of the recorded owner of the mortgage, thus the assignment of mortgage is invalid and [Ocwen] does not have standing to bring a foreclosure action;

(3) The Act 91 Notice attached as an exhibit was not sent by the mortgagee [Ocwen], and was sent by Homeward Residential instead;

(4) The Verification was defective because it was signed by a "Contract Management Coordinator" and not a person with personal knowledge of the facts contained in the pleading; and

(5) [Ocwen] failed to serve an Act 91 Notice upon [Beard] prior to the commencement of the foreclosure proceedings.

This Court sustained [Beard's] preliminary objections on December 4, 2014, and granted [Ocwen] leave to amend the complaint within twenty (20) days. [Ocwen] was directed to attach evidence that it is the owner of the subject Note, and to prove that valid Act 91 Notices were sent prior to commencing the instant action.

On January 5, 2015, [Ocwen] filed a motion for Reconsideration of the Order of December 4, 2014. [Ocwen] failed to file an amended complaint, and instead filed its Motion outside the time frame for which to file an amended complaint. On January 12, 2015, this Court denied [Ocwen's] Motion for Reconsideration. Thereafter, [Beard] filed a Motion to Enter Judgment for Failure to File an Amended Complaint. [Ocwen] filed a response to [Beard's] Motion, and a cross-motion for an extension of time for which to file an amended complaint. On March 13, 2015, this

Court denied [Ocwen's] cross-motion for an extension of time, and granted [Beard's] motion to enter judgment. Judgment for [Beard] was entered on March 30, 2015.

On April 13, 2015, [Ocwen] filed a Notice of Appeal, and a concise statement of matters complained of on appeal. [Ocwen] lists four (4) separate court orders that it is appealing – April 30, 2014,[1] December 4, 2014,[2] January 12, 2015,[3] and March 13, 2015.[4]

Trial Court Opinion, 6/18/2015, at 1-4 (footnotes omitted).

Ocwen now raises six major issues plus eight sub-issues. However, the trial court entered judgment in favor of Beard based upon fatal defects in the Act 91 notice and the verification, finding the other issues raised by Ocwen to have been waived. Our review of the certified record leads us to conclude that the trial court's rulings on those two issues are both correct and dispositive, regardless of the other issues raised by Ocwen.[5]

---

[1] The order sustained the preliminary objections to the original complaint. The order is actually dated April 29, 2014. The certified docket shows copies of the order were distributed on April 30, 2014.

[2] This order sustained the preliminary objections to the amended complaint.

[3] This order denied Ocwen's motion for reconsideration.

[4] This is the final appealable order that denied Ocwen's motion for extension of time and granted Beard's motion to enter judgment in her favor. This order was not docketed until March 30, 2015.

[5] Procedurally, we agree with the trial court that any current argument by Ocwen regarding the first complaint was made moot when Ocwen filed its amended complaint. However, we agree with Ocwen that the December 4, 2014 and January 12, 2015 orders were interlocutory and could not be appealed until judgment was entered on March 13, 2015 and docketed on March 30, 2015.

Accordingly, we will address only those issues specifically relied upon by the trial court in making its determination and we need not address Ocwen's remaining claims.

The Act 91 notice requirements are statutory and are found at 35 P.S. § 1680.403c. Relevant to this matter, Act 91 requires the mortgagee to provide the mortgagor with specific information regarding the foreclosure process including methods to avoid foreclosure. This notice may not be sent to the mortgagor until the mortgagor is "at least sixty (60) days contractually delinquent in his mortgage payments." **See** Section 1680.403c(a). Additionally, the mortgagee is not required to send another notice to the delinquent mortgagor "[u]nless the mortgagor has cured his or her mortgage delinquency by means of a mortgage assistance loan or otherwise." **See** Section 1680.403c(g).

Here, Homeward Residential (Homeward), possessor of the mortgage immediately prior to Ocwen, sent Beard the Act 91 notice that was dated November 26, 2012.[6] The notice indicated Beard was delinquent in payment

---

[6] Technically, Homeward was not the mortgagee at this time. Exhibit "A" to the amended complaint is the mortgage assignment from Columbia to Homeward. This document was prepared by an entity named "Security Connections, Inc." in Idaho Falls, Idaho. This document indicates that the process of assigning the mortgage to Homeward began on November 27, 2012, one day after the Act 91 notice was issued in Homeward's name. However, the assignment was not executed until March 12, 2013. **See** Amended Complaint, Exhibit "A".

from August 1, 2012. Accordingly, there was no issue with the timing of the notice, i.e. sixty days post the claimed August 1, 2012 delinquency.

However, both the original and amended complaints, dated January 9, 2014 and May 16, 2015, respectively, filed by Ocwen, assert that Beard was not delinquent in her mortgage payments until December 1, 2012. **See** Original Complaint, ¶ 5; Amended Complaint, ¶ 5. The Act 91 notice provided to Beard *predates* the alleged delinquency by four days. The statute clearly forbids the notice from being sent until the mortgagor is at least 60 days delinquent. Accordingly, the November 26, 2012, Act 91 notice is statutorily invalid as applied to the claimed December 1, 2012 delinquency. Pursuant to Section 1680.403c(g), Ocwen was required to send Beard another notice once the mortgage delinquency was greater than 60 days past the December 1, 2012 delinquency asserted in the complaint.[7] We are unwilling to accept this Act 91 notice, although it complies with the statutory timing requirements regarding the August 2012 delinquency, it does not statutorily comply with the December 2012 delinquency allegations of the complaint. If we were to accept the Act 91 notice, we believe this course would allow a lender to foreclose, after a delinquency was cured and

_____

[7] If the August 1, 2012 delinquency date listed on the Act 91 notice remained correct, it would seem obvious that Ocwen merely needed to correct the December 1, 2012 date set forth in the complaint.

a new delinquency incurred without sending the statutorily required subsequent Act 91 notice.

Ocwen argues it was not required to send a second notice; that it could rely on Homeward's Act 91 notice. However, this argument is based on Ocwen's assertion that Homeward's Act 91 notice was effective even after the mortgage had been transferred to Ocwen. Ocwen's argument misses the fact that Homeward's Act 91 notice predates the claimed mortgage delinquency. A new notice is required because Homeward's Act 91 notice is premature, based upon the allegations in Ocwen's complaint.

The trial court also determined that the verification of the complaint was improper. The Pennsylvania Rules of Civil Procedure require that:

> Every pleading containing an averment of fact not appearing of record in the action or containing a denial of fact shall state that the averment or denial is true upon the signer's personal knowledge or information and belief and shall be verified.

Pa.R.C.P. 1024(a).

Further, the rule requires:

> The verification shall be made by one or more of the parties filing the pleading unless all the parties (1) lack sufficient knowledge or information, or (2) are outside the jurisdiction of the court and the verification of none of them can be obtained within the time allowed for filing the pleading. In such cases, the verification may be made by any person having sufficient knowledge or information and belief and shall set forth the source of the person's information as to matters not stated upon his or her own knowledge and the reason why the verification is not made by a party.

Pa.R.C.P. 1024(c).

Here, the verification for the amended complaint is signed by Lori Ann Dasch, who is listed as a "Contract Management Coordinator". The verification states, in toto:

> The undersigned states that he/she is authorized to make this verification on behalf of the Plaintiff, and that the facts set forth in the foregoing pleading are true and correct to the best of the information and belief of the undersigned.
>
> The undersigned understands that this statement is made subject to the penalties of 18 Pa.C.S. Section 4904 relating to unsworn falsification to authorities.

*See* Verification, Amended Complaint.

This verification does not meet the requirements of Rule 1024. The Rule requires the verification be made by the party. Dasch has verified the information on behalf of Ocwen, but there is no indication that she is an officer or even an employee of Ocwen. In the preliminary objections to the amended complaint, Beard asserts that Dasch is not an "authorized officer of the Plaintiff Ocwen Loan Servicing, LLC." *See* Preliminary Objections to Amended Complaint at ¶ 47.[8] In answering this allegation, Ocwen did not assert that Dasch was an authorized officer. Ocwen merely asserted that Ocwen made the verification. *See* [Ocwen's] Response to [Beard's]

_____

[8] In paragraph 48, Beard also asserted, upon information and belief, Dasch to be an officer of other corporations, including GMAC Mortgage Corporation and Mortgage Electronic Registration Systems, Inc. While we are independently aware of other cases in which such allegations have been proven true, Beard has supplied no evidence in support of the claim against Dasch. In its response, Ocwen denied the allegation made in paragraph 48.

Preliminary Objections at ¶ 47. Accordingly, the trial court found that the verification was not made by a party.

While the Rule allows for someone other than a party to verify the information contained in the pleading, it also requires the verification to contain a statement of why the party could not verify the pleading. Further, the non-party who makes the verification must indicate the source of the information and belief upon which the verification rests. This verification contains neither.

In its response to Beard's preliminary objection to the amended complaint, Ocwen argued that even if the verification was defective,

> [t]he Rules of Civil Procedure are designed to achieve ends of justice and are not to be accorded the status of substantive objectives requiring [rigid] adherence. As we have often repeated 'courts should not be astute in enforcing technicalities to defeat apparently meritorious claims.' ***Lewis v. Erie Ins. Exchange***, 281 Pa.Super. 193, 199 (Pa.Super. 1980).

[Ocwen's] Response to [Beard's] Preliminary Objections [to Amended Complaint] at ¶ 47. We are not persuaded by Ocwen's argument.

Given the failure to send proper Act 91 notice, we do not believe it is in the best interest of justice to overlook the defects in the instant verification.[9]

---

[9] Here, the Note is specifically payable to Columbia National Incorporated. ***See*** Note, 4/26/2003 at ¶ 1. Paragraph 1 also contain language allowing the lender to transfer the Note and that anyone who takes the Note by transfer and who is entitled to receive payments becomes the holder of the note. ***Id***. The last page of the Note also states, "Without Recourse Pay to
*(Footnote Continued Next Page)*

Finally, we note Ocwen's objection to the trial court's final order in that it does not specifically state that the complaint was dismissed without prejudice. However, in its Pa.R.A.P. 1925(a) opinion the trial court unequivocally stated:

> Judgment in this case was not entered with prejudice. [Ocwen] is free to re-file a complaint in mortgage foreclosure against [Beard] in the event that the Pennsylvania Rules of Civil Procedure, and statutory safe-guards are properly followed, i.e. Act 6, Act 91 and Rule 1024 (verification of pleading). Therefore, judgment was properly entered in favor of [Beard] and against [Ocwen], and [Ocwen] has not been prejudiced by the entry of that judgment.

Trial Court Opinion, 6/17/2015, at 9.

Accordingly, our review of the certified record leads us to affirm the trial court's determination that judgment was entered without prejudice to Ocwen to file a subsequent complaint in mortgage foreclosure, should the facts so warrant.

_____
*(Footnote Continued)* ───────────────

the Order of Columbia National Incorporated", implying that Columbia anticipated formal transfer of the Note. While there was no determination by the trial court regarding whom or what entity was the note holder, and we make no finding thereto, the fact that this question exists further supports our determination that the verification is insufficient.

Regarding the status of Ocwen as the note holder, we are aware that notes and accompanying mortgages are routinely transferred from financial institution to financial institution in packets. Ocwen may well be the note holder by virtue of this procedure. However, we make no determination regarding the transfer of the Note with the mortgage.

J-A34016-15

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/26/2016