Terry L. CALDWELL and Carol A. Caldwell, Husband and Wife, Appellants

v.

KRIEBEL RESOURCES CO., LLC, Kriebel Resources, Kriebel Minerals, Inc., Kriebel Production Company, JGG Partners, L.P., K & K Mineral Resources Co., Kriebel Gas & Oil, Inc. and Range Resources–Appalachia, LLC, Appellees.

Superior Court of Pennsylvania.

Argued May 6, 2013.

Filed July 12, 2013.

James A. Naddeo, Clearfield, for appellants.

Nathaniel C. Parker, Clarion, for JGG, K & K, Kriebel Gas & Oil, Kriebel Minerals, Kriebel Production, Kriebel Resources, Kriebel Resources Co. and Kriebel Resources Co., LLC, appellees.

BEFORE: BENDER, J., GANTMAN, J., and OLSON, J.

OPINION BY BENDER, J.

Terry L. Caldwell and Carol A. Caldwell (Appellants) appeal from an order, dated August 2, 2012, and entered on August 3, 2012, that sustained the preliminary objections filed by Kriebel Resources Co., LLC, Kriebel Resources, Kriebel Minerals, Inc., Kriebel Production Company, JGG Partners, L.P., K & K Mineral Resources Co., and Kriebel Gas & Oil, Inc. (Kriebel Defendants), and the preliminary objections filed by Range Resources–Appalachia,

LLC (Range Resources Defendant), and dismissed Appellants' amended complaint. After review, we affirm.

◼ On January 19, 2001, Appellants and Kriebel Resources entered into an oil and gas agreement (Agreement) whereby Appellants leased approximately 105 acres to Kriebel Resources covering "all oil, gas, surface and Drilling Rights . . . owned or claimed by landowners." Agreement, ¶ 1. The Agreement provided for an initial 24-month term beginning on April 1, 2001, that would be extended so long as oil or gas was being produced. Agreement, ¶ 4. The parties do not dispute that gas is being produced. However, Appellants assert that the drilling activities to date only involve shallow gas drilling and that the Defendants "have not initiated any drilling activities for natural gas locked in the Marcellus Shale formation." Appellants' brief at 3. Appellants also claim that the "Defendants have failed to either pay delayed rentals . . . or to produce natural gas from the Marcellus Shale strata." *Id.* at 3–4.[1]

The trial court set forth an abbreviated recitation of the underlying basis for this case, stating:

Plaintiffs Terry and Carol Caldwell filed an Amended Complaint on March 6, 2012, seeking a declaratory judgment terminating an oil and gas lease entered into with Defendant Kriebel Resources. Plaintiffs allege four bases requiring termination of the lease: 1) the gas trapped within the Marcellus Shale is part of the mineral estate, and only "oil, gas, and surface rights" were transferred by the agreement; 2) Defendants did not develop the Marcellus Shale gas; 3) Defendants have breached an implied duty to produce gas in paying quantities; and 4) the intent of the parties was to convey the rights to shallow gas only, not Marcellus Shale gas, thus the contract is ambiguous and must be reformed. The Kriebel Defendants and Defendant Range Resources filed Preliminary Objections to the Amended Complaint, demurring to all Counts.

Trial Court Opinion (T.C.O.), 8/3/12, at 1. The trial court's opinion was issued simultaneously with its order sustaining the preliminary objections and dismissing Appellants' amended complaint. Thereafter, Appellants appealed to this Court, raising the following questions for our review:

I. Did the court err[ ] by failing to find that oil and gas leases in Pennsylvania include an implied covenant to develop thereby granting a demure [sic] to Count II of the complaint?

II. Did the court err[ ] by failing to find that oil and gas leases in Pennsylvania include an implied covenant to produce in paying quantities independent of the contract thereby granting a demur [sic] to Count III of the complaint?

III. Did the court err[ ] by dismissing the complaint without giving plaintiffs the opportunity to present evidence that the lessee was not acting in good faith as to the amount of gas being produced from plaintiffs' property?

IV. Did the court err[ ] in not taking testimony to determine whether the parties intended to include Marcellus gas in the 2001 oil and gas agreement thereby granting a demur [sic] to Count IV of the complaint?

V. Did the court err[ ] in not recognizing that Marcellus gas is unique in that

---

1. Although the Agreement contains a delayed rental provision, it appears that Defendants are not obligated to pay delayed rental amounts presently because gas is being produced. Appellants counter this by asserting that the delayed rental should be paid because Defendants are not producing gas from the Marcellus Shale strata.

it is part of the mineral estate thereby granting a demur [sic] to Court [sic] I of the complaint?

Appellants' brief at iii. Appellants' fourth and fifth questions listed in their brief were withdrawn and will, therefore, not be addressed in this opinion.

■ Because this appeal stems from the grant of preliminary objections, we are guided by the following:

> In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred. The impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven. This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion. When sustaining the trial court's ruling will result in the denial of [a] claim or a dismissal of suit, preliminary objections will be sustained only where the case is free and clear of doubt.

*Floors, Inc. v. Atlig,* 963 A.2d 912, 915 (Pa.Super.2009) (quoting *Cornerstone Land Development Co. of Pittsburgh LLC v. Wadwell Group,* 959 A.2d 1264, 1266–1267 (Pa.Super.2008) (citations omitted)).

Furthermore, a lease is in the nature of a contract and is controlled by principles of contract law. *J.K. Willison v. Consol. Coal Co.,* 536 Pa. 49, 54, 637 A.2d 979, 982 (1994). It must be construed in accordance with the terms of the agreement as manifestly expressed, and "[t]he accepted and plain meaning of the language used, rather than the silent intentions of the contracting parties, determines the construction to be given the

agreement." *Id.* (citations omitted). Further, a party seeking to terminate a lease bears the burden of proof. *See Jefferson County Gas Co. v. United Natural Gas Co.,* 247 Pa. 283, 286, 93 A. 340, 341 (1915).

*T.W. Phillips Gas and Oil Co. v. Jedlicka,* 42 A.3d 261, 267 (Pa.2012).

Appellants first claim that "an implied duty to develop the leasehold [should be] read into all leases, unless the parties clearly agree otherwise." Appellants' brief at 6. Specifically, Appellants rely on *Jacobs v. CNG Transmission Corp.,* 565 Pa. 228, 772 A.2d 445 (2001), which "not[ed] in the affirmative that Pennsylvania law recognizes an implied covenant but also recognizes that the specific agreement of the parties may preclude the application of the doctrine." *Id.* at 455. In *Jacobs,* the Supreme Court discussed its prior decision in *Hutchison v. Sunbeam Coal Corp.,* 513 Pa. 192, 519 A.2d 385 (1986), and then explained the basis for its holding, stating:

> An implied covenant to develop the underground resources appropriately exists where the only compensation to the landowner contemplated in the lease is royalty payments resulting from the extraction of that underground resource. Where, however, the parties have expressly agreed that the landowner shall be compensated if the lessee does not actively extract the resource, then the lessee has no implied obligation to engage in extraction activities.[5] Thus, so long as the lessee continues to pay the landowner for the opportunity to develop and produce oil or gas, the lessee need not actually drill wells. At the point where that compensation ceases due to the expiration of the term of the lease, or pursuant [to] the terms of the lease itself, the lessee then has an affirmative obligation either to develop and produce the oil or gas or terminate the

landowner's contractual obligations. As this Court stated in *McKnight v. Manufacturers' Natural Gas Co.*, 146 Pa. 185, 204, 23 A. 164, 166 (1892): "The defendant cannot hold the premises and refuse to operate them."

[5] What constitutes adequate compensation for this purpose obviously must be determined by taking into consideration the facts and circumstances of each individual case. *Jacobs*, 772 A.2d at 455. Thus, Appellants claim that "even with a clear implied duty to develop set forth by the courts, it has not been addressed whether such a duty attaches to each economically exploitable strata of natural gas or to the lessee." Appellant's brief at 8.

Without a Pennsylvania case to rely on that provides for a duty to economically exploit all strata of gas, Appellants rely on a Louisiana case that resolves a question as to whether the lessee prudently developed the leased property as a reasonably prudent operator would when there existed economically exploitable oil-producing sand that had not been developed. *See Goodrich v. Exxon Co.*, 608 So.2d 1019, 1027–28 (La.App.1992). Based upon the dictates of *Goodrich*, Appellants here argue that there is an implied duty to develop all strata, not simply to extract shallow gas and pay lessors the minimal royalties provided for in the lease. Thus, the request directed to this Court is an adoption of a standard requiring lessees "to develop all economically exploitable strata or … hold that the duty to develop is attached to each strata of the natural gas…." Appellant's brief at 9.

In response, the Range Resources Defendant asserts that Appellants are in essence requesting this Court to "read into their Agreement an implied duty to develop different strata[,]" which in effect "create[s] a new implied duty to be read into every oil and gas lease in the Common-wealth." Range Resources Defendant's brief at 7. To counter this argument, both the Kriebel Defendants and the Range Resources Defendant identify paragraph 11 in the Agreement, which provides that "[n]o inference or covenant shall be implied as to either party hereto since the full contractual obligations and covenants of each party [are] herein fully and expressly set forth." Agreement, ¶ 11. The Kriebel Defendants also rely on language in the *Hutchison* case, wherein the Supreme Court stated:

> The law will not imply a different contract than that which the parties have expressly adopted. To imply covenants on matters specifically addressed in the contract itself would violate this doctrine.

*Hutchison*, 519 A.2d at 388. *See also Jacobs*, 772 A.2d at 455 ("Pennsylvania law recognizes an implied covenant but also recognizes that the specific agreement of the parties may preclude the application of the doctrine."). Accordingly, under Pennsylvania law, we are not authorized to impose an implied duty on the lessee to develop the various strata in light of the language contained in their contract. This is so, particularly in light of the fact that the Defendants are producing gas pursuant to the Agreement, a fact that Appellants acknowledge. Appellants also overlook the guarantee that they would receive delay rentals if no gas were produced. Moreover, the Louisiana case Appellants rely on interprets Louisiana statutory language and Appellants fail to cite and/or assert comparable language in any statute enacted in Pennsylvania. We are not compelled to follow Louisiana law and Appellants have failed to persuade this Court that in Pennsylvania a lessee, as a party to an oil and gas lease, is required to drill additional wells to different depths to completely develop the entire property. Thus,

we conclude that Appellants' first argument does not afford them relief.

■ With regard to Appellants' second and third issues, they argue "that there is an implied duty to develop in paying quantities and that good faith is the standard to be applied by the courts." Appellants' brief at 10. Appellants assert that Defendants have only drilled for shallow gas and have, therefore, only paid minimal royalties. They further contend that in the ensuing ten years after entering into the lease, Defendants have failed to explore or drill for the gas trapped in the Marcellus Shale formation. Thus, Appellants claim that the trial court should not have granted preliminary objections without an opportunity for Appellants to present evidence of Defendants' bad faith. They request a remand for further proceedings with directions to the trial court that "paying quantities" should be based on all gas strata. Appellants also assert that the good faith standard should be evolving to include "marketing, delivery, production amounts, additional wells, compression, etc." because these factors impact production and in turn the royalty they receive. Appellants' brief at 11.

Unfortunately for Appellants, we must disagree. The *Jedlicka* case upon which Appellant's rely held that:

> if a well consistently pays a profit, however small, over operating expenses, it will be deemed to have produced in paying quantities. Where, however, production on a well has been marginal or sporadic, such that, over some period, the well's profits do not exceed its operating expenses, a determination of whether the well has produced in paying quantities requires consideration of the operator's good faith judgment in maintaining operation of the well. In assessing whether an operator has exercised his judgment in good faith in this re-

gard, a court must consider the reasonableness of the time period during which the operator has continued his operation of the well in an effort to reestablish the well's profitability.

*Jedlicka*, 42 A.3d at 276–77 (footnote omitted). Thus, it is evident from this definition of "paying quantities," that Defendants have produced a paying quantity, albeit not to the extent Appellants desire. Certainly, Defendants are not holding the property without developing it, which would not be in compliance with the dictates of *Jacobs*. The trial court's opinion concerning this issue provides that:

> the parties in [the *Jedlicka*] case had placed the term "paying quantities" into the lease, thereby making the issue the interpretation of an explicit contractual term—not an implied duty. Here, the lease only required that oil or gas is produced from the property. Thus, *Jedlicka* has no bearing on the case at hand.

T.C.O. at 4. We agree with the trial court's interpretation and emphasize that the Agreement does not contain the term "paying quantities." Furthermore, Appellants have simply not convinced this Court that the legal theory set forth in *Jedlicka* should be expanded "to include a good faith standard for all aspects of the [gas] industry that affect production of lessors' natural gas." Appellants' brief at 12.

Accordingly, we conclude that the trial court's order sustaining the preliminary objections filed by the Kriebel Defendants and the Range Resources Defendant and dismissing Appellants' complaint should be upheld. Appellants have failed to convince us otherwise.

Order affirmed.